Court is now in session on the Harper v. Southern Pine Electric Cooperative. Mr. Simmons. Good morning. May it please the court. My name is Michael Simmons. I represent Kimberly Harper and others in this appeal. Your Honor, the defendant I believe is Southern Pine Electric Cooperative. Southern Pine is authorized to exist and created by statute. Its rates are not regulated by the Mississippi Public Service Commission or any other regulatory authority in the state of Mississippi. It is non-profit and member-owned. The only revenue or the revenue received by Southern Pine by statutory definition set forth in Mississippi Code annotated 775203 subparagraph n or by definition rates. With respect to the procedural history, this case was originally filed in state court. It was removed to federal court by Southern Pine. The district court remanded the case to state court and Southern Pine took an appeal from that based on federal officer removal and this court reversed the remand order. Mr. Simmons, we've read the briefs and we're familiar with the procedural history, so why don't you move on to your lead points. Of course, you can refer back to the procedures and the facts as you need to. Yes, Your Honor. There are two principal issues that were before the district court and are before this court today. The first issue is which version of the controlling statute applies. That is 775235 that was amended in July effective from and after July of 2016. Our position as I will discuss in just a moment is and our amended complaint makes clear that it is the pre-amendment version that applies. Let me just interrupt you on that for just a minute. I don't mean to cut off your train of thought. On that specific point, if we should determine that the modern version of the statute is the one that's applicable, do you argue that you can still prevail or does your argument necessarily rely on the applicability of the original statute? Your Honor, my argument and my client's claims necessarily depend on application of the pre-amended version of the statute. I'm so thoughtful. The second issue is whether discretion on the part of Southern Pines Board of Directors regarding general rate revenues destroyed my client's right to a return of excess rate revenues. Now, I'm going to address each argument in turn and I will unless the court directs me. Otherwise, I'll dispense with the discussion of the standard 12126 motion. The court's well very familiar with that standard. As I said earlier, sums collected from Southern Pines member rate payers are by statutory definition rates. The only regulation placed on the rates charged by Southern Pine is the statute 775235. The statute was amended effective July of 2016 to grant electric co-ops such as Southern Pine more discretion in the disposition of excess revenue. But in a side-by-side comparison of both versions of the statute, which is on page 1292 of the record, both statutes identically provide that revenues and receipts of a corporation shall first be devoted to operating and maintenance expenses and to the payment of such principal and interest and thereafter to such reserves for improvement, new construction, depreciation, contingency as the board may from time to time prescribe. So, there are certain categories of items that the board has discretion to determine and we certainly do not contest that the board has that discretion. It's everything that is left over after the board has made determinations on expenses and reserves that is what we term excess revenue and that is the sum or sums that are subject to our amended complaint. What is what is the legal requirement as to that? Do all of those sums have to be distributed and if so, how often or by what means is that required to occur? Judge Smith, with respect to the means by which it is to occur, the statute is very clear and the board has, again, some limited discretion on excess revenues and that is to either return to the member or payers or to reduce rates. And over the years, Southern Pine has made some what we would term nominal returns of excess revenue. But the it's an either or proposition under the pre-amended version of the statute. With regard to timing, that is, that is not, was not an issue on the, before the district court and do not understand that to be an issue before this court. That would be something that, you know, following some discovery, which we've not had the opportunity to conduct in the district court and the subject of expert opinion testimony. Well, my question, though, was more a question of law. That is what, in your view, does the statute require in terms of how often the what I'll call distributions must be made? Well, Your Honor, the statute itself is silent on timing. That is not a, that is not something that that the statute prescribes. But to accumulate, based on our best available information, again, without the benefit of discovery for Southern Pine to have accumulated at least as of 2016, $248 million in excess revenues is certainly beyond the exercise of discretion that is in keeping with the statute. It's, you know, the statute is phrased in mandatory terms, and it says shall be returned to the members in the form of payments or rate reductions. So, you know, for the word shall to have any meaning, it has to occur sometime. And that's the basis of our claims is where our position is. Now is the time for that shall be returned to occur. With regard to the which version of the statute applies? Obviously, that's a that's an important issue for the court because we recognize that if the amended version of the statute applies, the board has more discretion, broader discretion than under the prior version to determine how excess revenues are to be returned. We would point the court's opinion or the court's attention rather to the Mississippi Supreme Court's opinion and the Doorshop versus Alcorn Electric Power Association. That's a 2018 Mississippi Supreme Court case at 261 Southern Byrd 1099. And there, the court was considering a a different statute, section 277.5259, that was amended in the same house bill in which section 235 was amended. And there, the court said, if the statutory language mandates that the statute is to apply from and after passage, it is not to be applied retroactively to causes of action which are approved prior to passage of the statute. We submitted a Rule 28J supplemental authority to the court yesterday. I believe we ran afoul of the rule by exceeding the 350 words that are permitted. We will pare that down and resubmit that along with the actual house bill in which both section 259 discussed in Doorshop and section 235 which is the controlling statute here. Both of those statutes were amended in the same house bill and the actual house bill states that it's effective from and after July 1, 2016. And so, in keeping with what the Mississippi Supreme Court has said with regard to statutory construction where a bill says that it is effective from and after a date certain, then it is not, uh, the amended version is not retroactively applicable to causes of action which are approved prior to the passage date. And again, we will get that Rule 28J supplemental authority submitted to the court either this afternoon or no later than tomorrow. Mr. Simmons, your letter was stricken because it's not a legitimate letter under Rule 28J. It has nothing to do with the length of your letter. You just filed what really amounts to a supplemental brief making various arguments and calling attention to some authorities. 28J is reserved for you discover some supplemental authority, usually a brand new case or a recent change in the statute, and you call it to our attention, but you can't just file a supplemental brief that makes arguments. So, that's the status of your letter. Well, thank you for that clarification, Judge. Nonetheless, the Mississippi Supreme Court's opinion in the Doorshop, we believe and we submit to the court, settles the issue of which version of the statute applies because there is nothing in the body of the amended Section 775-235 which indicates that it is to apply retroactively. And we've submitted or provided some additional case authority for that proposition in our principal brief and in our reply brief. I will move. So, what do you do with the Stone opinion, Mississippi Supreme Court 1951 regarding an exception to a prospective only application of statutes? The Stone opinion, Your Honor, that's where the Stone opinion deals with the rights and remedies created solely by statute. And here, our client's rights and remedies are created solely by statute. And so, we would submit that that distinguishes the Stone opinion and I think perhaps there is one other opinion that held similar to the Stone opinion. With respect to the discretion, where we submit the, where the district court err here is the district court considered a hypothetical exercise of discretion by Southern Pines Board of Directors. That is not what actually occurred and not, and it's contrary to what was pledged in our amended complaint, which the court is aware must be accepted as proof. We, the Board of Directors of Southern Pines over the years has made allocations of rate revenue, general rate revenue after it's received, allocated that revenue to the statutorily permitted categories of expenses and reserves. And it's everything that's left over and we know that there is more than a dollar left over. We know that. And that's pledged in our complaint. We have specifically pledged that there's $248 million of excess revenue that's accumulated over the years. And to say that the board could theoretically have reserved all of its rate revenue over the years is not what in fact actually occurred. So, we submit that as a hypothetical that is contrary to what's pled and what actually occurred. And I'll, I think it's important for me to, or not concede, but certainly to recognize that the board does have discretion on how much money to place in the various categories of expenses and reserve items that the statute permits. We do not confess that the board has that discretion. What we, we're claiming, what our complaint makes very clear is that we're seeking everything that's left over after the board has made those allocations of funds to the statutorily permitted. Okay, your, Mr. Simmons, your initial time has expired and you've saved time for rebuttal. Thank you, Your Honor. Ms. Schwing. Good morning. May it please the court. My name is Chris Schwing and I'm honored to be today representing Southern Pine Electric Cooperative. This case is about a few members who want to take over the management of a cooperative and usurp the powers that have been given to them by the Mississippi legislature. This is a rather simple case. The district court should be affirmed because it recognized... Ms. Schwing, you don't really impress us by trying to poison the well with that kind of overblown statement at the beginning. We're dealing with a specific statute. Of course, there's the question of which statute applies and with the specific facts of the case and not what you think these plaintiffs are up to. One of the things that our court always tries to avoid is to reach a result that seems absurd and the amount of money here that's being retained seems on its face absurd. It may be that it's limited by the statute and that there's nothing we can or should do about that, but on its face it looks like an unreasonable result. So you need to deal with that and you also just need to deal with the facts and the law and not some editorial about what you think certain plaintiffs are up to. Yes, your honor. I think it's the amount that the plaintiffs have alleged when we look at the allegations in the complaint is that they want to take over $112 million of equity out of the co-op. They claim that amount is related to the minimum that the federal regulations allow the cooperative to keep so that it doesn't have issues with its loan commitments and loan regulations. I think it's important to look at the focus on the power and the discretion that has been given to the board by the statutes themselves. First, in 775-223, it gives the board the discretion to do all things necessary and convenient in conducting the business of the corporation including but not limited to amending the bylaws for the management of the association and also related to the disposition of the revenues and receipts of the cooperative. I understand that your argument is essentially that because the board has that discretion under the new statute that there can be no vested right. Is that the core of your argument? And hence, with no vested right, the current statute then would be an answer to this lawsuit. That's the core of it as I understand it. Yes, Your Honor. The plaintiffs do not have any vested right to demand capital out of the cooperative. Under, however, the old statute or the current statute, which was in place before the plaintiffs ever even filed this case, under both of those statutes, the board has the discretion to establish reserves and determine what, if any, excess needs to be returned to the members. And so, under either version, the old version or the current version, plaintiffs would not, as the district court recognized, have a tenable inviolable claim. With the statute, your argument boils down to the fact that this is a, well, it's not a, there's the old public rights exception, but that this was a vested personal right of the individual consumers or the utilization of the services, right? Right. There is no, there's no vested right. Have a vested right. And you say that they don't have a vested right because the board has the authority to maintain the adequacy of reserves itself. Is that the argument? That is certainly the argument for, that we have here. Yes, there is no vested right. We see that from the Mississippi Supreme Court in the Clark case, the Clark County versus Reed case, for example, where the court made clear that equity credits on the books of a cooperative are not presently due and payable. In other words, a member cannot come to the cooperative and demand its equity out. The plaintiffs under either statute do not have the ability to come and make that demand. The new statute applies because, as the court noted in the Stone case from the Mississippi Supreme Court in the Cellular South case, that this is a situation, as counsel opposite just told us and agreed, where their cause of action exists solely because of a statute. And in those instances, when the statute has been amended before it's been either reduced to a final judgment or they wouldn't abrogate a vested right, the amendment is what applies. And because the amendment applies, there's two reasons why they don't have, or have failed to state a claim. One is because they don't have a vested right in the equity that they're demanding. Secondly, as opposing counsel mentioned, the board has discretion in the method that it can use to make those returns. And they have conceded that they don't have a claim under that amended statute. Can that discretion be abused or is it unlimited? I think that there are potentially always situations where discretion can be abused by the board, but that's not what the allegations are in this complaint. The allegations in this complaint instead are that the members disagree with what they think that the board has done. In other words, they think that it would be reasonable in their minds to have no more than 30% equity for the co-op. The reason for this, I guess, inevitably goes back to the judgment of the balance of the reserves to the liabilities and the maintenance of the ongoing, in other words, their obligations to the various lenders, the agencies that provide the money to sustain the operation. In other words, the board is sitting there making judgments about adequacy of reserves. And as I understand your argument is that because of that, there is no vested individual right here, no claim stated. But the follow-on question that is inevitably of the issue, why doesn't that then simply turn to the question of an argument that that the board, the judgment is abused here because, and then you have to have a factual basis for this, of such a huge multiple of the liability, et cetera, et cetera, et cetera. In other words, the board has made a judgment that they want these reserves given their liabilities there. And unless you can, so they have no vested right, but that makes sense up to, until you say that there's no limitation to that. That is, I understand that the finances made no claim here of what I'm saying that the board has misallocated or that this, the adequacy of the reserves, et cetera, et cetera, that's not the basis of the claim. That's right. There's no allegations in the complaint that the board has abused its discretion. As the district court pointed out, there's not allegations that, for example, the board determined that certain amounts of equity needed to be returned and yet had failed to do so. It is just simply the plaintiffs indicating that they feel what would be a reasonable amount is to have 30%. And the statute just simply, it doesn't have any of that language. What is the metric that the board has applied? Do we know? I'm sorry, I didn't hear you. The board applied as to the adequacy of reserves. You said you used it throughout 30%. The district court did not apply a certain metric and there's not a metric in, in the statute other than to give that discretion over to the board. I'm not talking about the district. My question is, is on this record, is there anything that any evidence of a metric that the board did apply? All we have is just, this is the outcome. They're not going to distribute it implicit in that as a judgment that these were necessary. Is there anything else? Has that issue been developed at all in this lawsuit? No, the only, the only allegations are that the amount that is in the complaint is actually what the court has, I'm sorry, what the cooperative has reserved in the capital accounts of the members. If we look at the bylaws that the board has the authority to adopt and amend, those bylaws indicate that the amounts, in order to be a non-profit, in fact, the amounts that are allocated to the members are all amounts that exceed the operating costs and expenses. That is not, that's very, that's very different than the amounts that the statute that we're talking about here today addresses. So, and this gets to Judge Smith, your question about what the reasonableness is, because just because they are saying that there's $248 million in assets that are on the books of the cooperative, that is not the excess earnings as plaintiff has been using the terms that is related to the statute. And here's why. When a cooperative allocates the capital onto the books of the members, it doesn't take out for any of these reserves. It doesn't, it can't do that under, in order to be a non-profit. So it is allowed to then take that capital that it has allocated to the members where it has gone above and beyond what this statute would require and use that, those funds for the various purposes that are set out here. And what we're contending is that there under the statute itself, and we have to give, you know, we have to look at the clear, the clear words of the statute. It doesn't set any kind of limit or cap on the cooperative and thereby also force the cooperative to go and take on more federal debt, which ultimately would just raise the interest expense that the cooperative would have to have to then pass those on to the members and increased electric rates. Well, implicitly what you said right at the end though, is that it's a statement basically that they are utilizing this, these funds for operating and in reducing their debt obligations to the lenders. In other words, they're not borrowing the money. They're using that money. Does the record sustain that? Or is there any evidence about it? Correct. I thought they still had federal lenders and other lenders. Oh, they certainly do. They certainly do. And that's clear. But what we have here is the board has to make a determination on balancing the amount of federal debt that it's going to have and the amount of capital that it's going to raise from its members and use. And that's what the making power to be able to decide. What the plaintiffs want is to shift that. They want to have the amount of capital brought down to 30%, which is going to increase the amount of debt that the cooperative is going to have to take on, in addition to the amount of interest expense that it's going to have to take on, which is going to necessarily mean that the members themselves then are going to have higher electric rates. I guess it goes back to the same thing, the question that both Judge Jess and I had some concerns about, obviously, is that all this has been done about allegations and pleadings and so forth. And it's obvious that if you drop the money that you're borrowing from other agencies and use these reserves and so forth, but I don't hear any evidence in the record about the numbers or any of that sort. And is that because the challenge has never been made or? Well, we're just looking here at the, we're on a motion to trust the judgment of the board that they do whatever they want to do. Right. And because we're just looking here at a motion to dismiss, we're limited to the allegations that are here and whether or not they're sufficient to plead a plausible claim on the statute. And we would contend that they are not because of the multiple levels of discretion that are embedded and granted to the board by these statutes. And it's specifically also that the newer version, the current version of the statute applies and which, as opposing counsel has said, they concede they do not have a case under. I think it's very important to know that the Mississippi Supreme Court just this year, in looking at these exact cases, there's eight of them that have been brought. And in looking at another one of those cases, the Mississippi, and that was the Virgil versus Southwest cooperative case, the Mississippi Supreme Court applied the new version of this statute. So they've already to these very cases applied the new version. They've quoted it in the opinion that they issued in that case. And so I think that is an important thing to note. Tell us about how the board is chosen. Is it a self-perpetuating board or do persons in the just tell us all that happens? Right. And all of that is set by Mississippi law. So the board is made up of members themselves. So in order to be a director, you have to be a member of the cooperative and they are elected to serve in that capacity by other members themselves. So if the plaintiffs, for example, did not agree with the equity level that the cooperative is maintaining, they certainly through the statutory process could themselves decide to run to be on the board and effectuate change in that regard. It's just simply that they can't read requirements into the statute that are that are simply not there. So the another I don't mean to spend too much time on this, but under the statute, then you just said that anyone can run. So it's not it's not up to the board to put together a slate or a ballot and give people choices. But any of the members have a right to present themselves as candidates for the board. That's correct. That's correct, Your Honor. And that's also set out again in statute and in the bylaws of the cooperative that are in the record as well. Another case that I think is important in addition to the Clark Mississippi Clark case that said that a member doesn't have the right to demand equity out of the cooperative. So another case that is plaintiffs ignore is the Third Circuit case of Cessna versus REA Energy Co-op. This is another example of these cases that have been filed where the member was disagreeing with the amount of equity that the cooperative was maintaining. That case is important because the statute in Pennsylvania is the same to statute that is in Mississippi when it comes to the discretion that is given to the board. It's got identical language that the board can reserve for improvements, new construction, depreciation and contingencies as the board may from time to time prescribe. And that case held, as we mentioned in our briefs, that the there was no violation of the statute because of the discretion that was afforded to the board through the statute. They also pointed out as an additional argument for why there was no viable claim, a bylaw provision that was in both that cooperative's bylaws and is in the bylaws of Southern Pine. And that provision says that all such amounts credited to the accounts of the capital account of a patron shall have the same status as though they have been paid to the patron in cash pursuant to a legal obligation to do so. And the patron then furnished the cooperative corresponding amounts of capital. So the court found that that bylaw provision did not conflict with the statute and that if there was any obligation for the board to make a return, that it had satisfied that through its contractual agreement with the plaintiff to give that money and then have the member give that back to the cooperative. The bottom line here is that the legislature granted a substantial amount of discretion to the board. They did it under the old statute and they did it under the new statute. The new statute applies in this case because there's not a vested right. No cause of action has also accrued for the same reasons that there's no vested right. Therefore, that statute applies under either one. Plaintiffs have not alleged a viable claim and the district's court decision should be affirmed. And unless there's any other questions, I see that I'm out of time. Thank you, Mr. Swing. Mr. Simmons, you've saved time for a vote. Yes, your honor. I will just hit a few points that was raised by that were raised by counsel for southern time. The same statute that counsel opposite referred to that being a section 77 5223, which was quoted for a point regarding the bylaws of the corporation, that same statute says that the bylaws of the corporation's electric co-op may make provisions not inconsistent. And then if you read down in the long list of things, it says not inconsistent with law regarding the disposition of revenues and receipts of the corporation. So Southern Pine by statute is prohibited from amending its bylaws to circumvent the statute regarding the disposition of excess rate revenues and receipts. That being 77 to 25. Mr. Mr. Simmons and her presentation, Ms. Swing alluded to a case in which she says the Mississippi Supreme Court has applied the new statute. Can you comment on that, please? In the Virgil case? Your honor, the Virgil case, the issue in that was the applicability of an arbitration clause inserted into that cooperative's bylaws. It was not the holding was not with regard to the obligation of the board to return excess revenue. So completely different issue. And we submit, do not recall that the Mississippi Supreme Court made a determination or ruling that the new version of the statute applies. And in fact, I think the need for a rule 28 J supplemental authority is actually unnecessary because House Bill 1139, which we getting at page 1065 and that that bill at the very last line and that very lengthy House Bill states that it's effective from from and after July 1st, 2016. There's nothing in House Bill that House Bill 1139 that even so much as suggest that it applies retroactively. In fact, uh, in reading the Borshaw case, which states that unless the statute says that it applies retroactively, it doesn't. And in fact, the actual House Bill, which is in the record, is contrary to that. Judge Higginbotham asked a question about concerning whether there's anything in the record to reflect what actually occurred here. I would point the court to the record beginning at or on page 1513. It's the form 990, uh, filed by Southern Pine under penalty of perjury with the Internal Revenue Service on the tax forms that must be filed. This particular keep in mind, uh, would ask the board. Keep in mind it again. We've not had the opportunity to conduct discovery file after remand because the case was stayed pending the motion to dismiss. We had some very limited discovery during the short period of time. This case was pending in state court, and one of the documents is the form 990 that is at page 1513 of the record. And on, uh, line 14, uh, it reflects, uh, benefits paid to members. And in zeroing out the gross revenues of the co-op, uh, one of the items, again, line 14, it reflects $18,983,000 of benefits paid to members in 2014 and $19,457,000 in benefits paid to members in 2016. So, uh, this form 990 also, uh, reflects, uh, other expenses of $206,000,000 and $202,000,000. Uh, go back to the Clark County case very quickly. The Clark County case arose under the agricultural co-op statute, and on page 11 of our primary brief, we point out a side-by-side comparison with, uh, the statute applicable here, 775-235. The agricultural co-op statute contains, uh, discretion on the part of ag co-op boards, and it says that excess revenues may be expired. Thank you. The case is under submission, as are all the cases from this week, uh, and the court is in recess under the usual order. Thank you for your time. Thank you.